**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LUCAS WALL,<br><br>               Plaintiff,<br><br>v.<br><br>RELIANCE STANDARD LIFE<br>INSURANCE CO.,<br><br>               Defendant. | Civ. Action No. 20-2075<br>(EGS) |

<u>**MEMORANDUM OPINION**</u>

Plaintiff Lucas Wall ("Mr. Wall"), proceeding *pro se*, brings this lawsuit against Reliance Standard Life Insurance Company ("Reliance") seeking $10,000 in damages for: (1) harassment; (2) invasion of privacy; and intentional infliction of emotional distress arising out of the termination of his disability benefits. Compl., ECF No. 1-1 at 1-2. Mr. Wall filed his claim in the Small Claims and Conciliation Branch of the Superior Court of the District of Columbia, and Reliance removed the action to this court, alleging federal jurisdiction based on the Employment Retirement Income Security Act of 1974 ("ERISA") and 29 U.S.C. §§ 1132(e)(1) and 1132(f). Notice of Removal, ECF No. 1 at 2.

Pending before the Court is Mr. Wall's Motion for Leave to File Second Amended Complaint. *See* ECF No. 21. Upon

consideration of the motion, opposition, reply, and the applicable law, Mr. Wall's motion is **GRANTED IN PART AND DENIED IN PART.**

## I.   Background

Mr. Wall alleges that his long-term disability benefits ("benefits") are provided by a policy underwritten and administered by Reliance for the employees of the American Association of State Highway & Transportation Officials, by whom he was employed from June 2008 until March 2012. *Id.* at 19-20. In March 2012, Mr. Wall became "Totally Disabled" due to Non-24-Hour Sleep/Wake Disorder. *Id.* at 20. Mr. Wall received benefits until January 29, 2020, when Reliance notified him that it was terminating his benefits. *Id.* at 21. Mr. Wall alleges that Reliance's "termination of [his] benefits was based in great part on a November 10, 2019, 'peer review' of his medical records by Defendant Dr. David Brodner." *Id.* Mr. Wall further alleges that in response to his appeal of the termination decision, Reliance "commissioned another 'peer review' by Defendant Dr. Tajuddin Jiva" and that Reliance denied his appeal on July 29, 2020. *Id.* at 21-22 Thereafter, Reliance had Mr. Wall undergo an Independent Medical Examination ("IME"), after which the termination of his benefits was reversed. *Id.* at 22. In response to the notification he received that his benefits were being reinstated, Mr. Wall "demanded [Reliance] revise the

2

letter with five specific paragraphs ensuring [he] will be protected from its arbitrary and capricious decisionmaking in the future." *Id.* at 23.

Based on these alleged facts, Mr. Wall's Amended Complaint asserts the following claims: (1) demand for payment of interest, costs & fees, & judicial relief to ensure continued [] benefits under ERISA against Reliance, including violations of ERISA; (2) bad faith against all defendants and breach of implied contractual covenant of good faith and fair dealing, and violations of Pennsylvania insurance law by Reliance; (3) intentional infliction of emotional distress against all defendants; (4) negligence against all defendants; (5) harassment against Reliance; (6) invasion of privacy against Reliance; (7) medical malpractice against Dr. Brodner and Dr. Jiva. *See id.* at 24-62.

On September 14, 2020, Mr. Wall filed a Motion for Leave to File Amended Complaint, *see* ECF No. 16; but withdrew that motion on September 24, 2020, *see* ECF No. 20. On the same day, however, Mr. Wall filed a Motion for Leave to File Second Amended Complaint, *see* ECF No. 21; which the Court will construe as a Motion for Leave to File an Amended Complaint since Mr. Wall withdrew his first request for leave to file an amended complaint.

## II.   Standards of Review

### A.   Federal Rule of Civil Procedure 15

Federal Rule of Civil Procedure 15 provides that a plaintiff may amend his complaint more than 21 days after a responsive pleading has been filed with the consent of the defendant or the leave of court, *see* Fed. R. Civ. P. 15(a); and that "[t]he court should freely give leave when justice so requires," *see* Fed. R. Civ. P. 15(a)(2). "Courts may deny a motion to amend a complaint as futile . . . if the proposed claim would not survive a motion to dismiss." *James Madison Ltd. By Hecht v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "[I]n assessing an argument that an amendment would be futile, the court must assess the proposed amendments under the same standard as would be applied to a motion to dismiss." *Oladokun v. Corr. Treatment Facility*, 5 F. Supp. 3d 7, 13 (D.D.C. 2013). "Because amendments are to be liberally granted, the non-movant bears the burden of showing why an amendment should not be allowed." *Abdullah v. Washington*, 530 F. Supp. 2d 112, 115 (D.D.C. 2008), app. dismissed, No. 08-7022, 2008 U.S. App. Lexis 9082 (D.C. Cir. Mar. 12, 2008) (citing *Dove v. WMATA*, 221 F.R.D. 246, 2476 (D.D.C. 2004).

**B.   Federal Rule of Civil Procedure 12(b)(6)**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, (2007) (internal quotation marks omitted).

Despite this liberal pleading standard, to survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (internal quotation marks omitted). A claim is facially plausible when the facts pled in the complaint allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The standard does not amount to a "probability requirement," but it does require more than a "sheer possibility that a defendant has acted unlawfully." *Id.*

"[W]hen ruling on a defendant's motion to dismiss [pursuant to Rule 12(b)(6)], a judge must accept as true all of the factual allegations contained in the complaint." *Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009) (internal quotation marks omitted). "In determining whether a

complaint fails to state a claim, [the Court] may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the Court] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Schl.*, 117 F.3d 621, 624 (D.C. Cir. 1997). In addition, the court must give the plaintiff the "benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). A "*pro se* complaint is entitled to liberal construction." *Washington v. Geren*, 675 F. Supp. 2d 26, 31 (D.D.C. 2009) (citation omitted). Even so, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not sufficient to state a claim. *Iqbal*, 556 U.S. at 678.

## III. Analysis

### A.  ERISA Claims

In Count I, Mr. Wall demands payment of interest, costs and fees from Reliance; judicial relief to ensure continued benefits under ERISA from Reliance, and contends that Reliance violated ERISA when it terminated his benefits for six months. Am. Compl., ECF No. 21 at 24-36.

ERISA's civil enforcement provision provides that "[a] civil action may be brought—(1) by a participant or beneficiary— ... (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to

6

clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

### 1.   Administrative Exhaustion and Mootness

Reliance argues that Mr. Wall's motion should be denied because he filed his Superior Court complaint prior to exhausting his administrative remedies as the appeal of the termination of his benefits was pending, and that his claims against Reliance are moot because Mr. Wall's benefits have since been reinstated. Opp'n, ECF No. 22 at 4-6. Reliance also argues that Mr. Wall's claims for interest, costs, or fees are "null" for the same reason. *Id.* at 11. Mr. Wall does not dispute that he filed his Superior Court complaint before he exhausted his administrative remedies, Reply, ECF No. 23 at 2; however, there is also no dispute that those remedies have been exhausted at this time.

"It is well established that, barring exceptional circumstances, plaintiffs seeking a determination pursuant to ERISA of rights under their pension plans 'must ... exhaust available administrative remedies under their ERISA-governed plans before they may bring suit in federal court.'" *Communications Workers of America v. American Tel. and Tel. Co.*, 40 F.3d 426, 431 (D.C. Cir. 1994) (internal quotation marks and citations omitted). However, "[b]ecause ERISA itself does not specifically require the exhaustion of remedies available under

pension plans, courts have applied this requirement as a matter of judicial discretion." *Id.* at 432. Among the reasons for applying this requirement is to avoid judicial review where "a plan's own remedial procedures [] resolve[s] [the] claims." *Id.*

Mr. Wall has now exhausted his administrative remedies and his benefits have been reinstated by Reliance. He seeks to amend his complaint to add, among other things, certain ERISA claims. As explained below, Mr. Wall states certain claims under ERISA. Accordingly, there is no reason for the Court to apply the exhaustion requirement at this time and dismiss Mr. Wall's complaint. The Court rejects Reliance's argument that Mr. Wall's claims are moot because his benefits have been reinstated, because Mr. Wall seeks to amend his complaint to assert different ERISA claims.

### 2.   Interest on Withheld Benefits

Mr. Wall alleges that Reliance has not paid the interest on the long-term disability benefits that were withheld for six months. Am. Compl., ECF No. 21 at 25. Reliance argues that Mr. Wall is not entitled to pre-judgment interest because there has been no judgment in this case. Opp'n, ECF No. 22 at 11-12.

"[P]rejudgment interest on unpaid ERISA benefits is presumptively appropriate" because: (1) "to permit the fiduciary to retain the interest earned on wrongly withheld benefits would amount to unjust enrichment—a fiduciary would benefit from

failing to pay ERISA benefits"; (2) "prejudgment interest
ensures that a beneficiary is fully compensated, including for
the loss of the use of money that is his"; and (3) "prejudgment
interest promotes settlement and deters any attempt to benefit
unfairly from inevitable litigation delay." *Moore v. Capital
Care*, 461 F.3d 1, 12-13 (D.C. Cir. 2006) (citations omitted).
This same reasoning arguably applies to unpaid interest on the
benefits that Mr. Wall alleges were withheld for six months.
Accordingly, Mr. Wall states a claim for recovery of the
interest on the withheld benefits. 29 U.S.C. § 1132(a)(1)(B).

### 3.    Attorney's Fees

Mr. Wall seeks costs and attorney's fees, to be paid to an
attorney should he hire one, or to himself if he continues to
represent himself pro se. Am. Compl., ECF No. 21 at 62. Reliance
argues that Mr. Wall is not entitled to collect fees because he
is not an attorney. Opp'n, ECF No. 22 at 12. However, none of
the cases cited by Reliance concern whether a party proceeding
*pro se* can recover attorney's fees under ERISA. *See id*. at 12.
Whether Mr. Wall would be entitled to attorney's fees can be
determined at a later time.

### 4.    Equitable Relief Under ERISA

Mr. Wall alleges that Reliance's termination of his long-
term disability benefits constitutes a violation of ERISA, and
seeks "equitable relief under ERISA to ensure this illegal

action never happens in the future and to compensate [him] for the damages [he has] incurred because of the illegal act." Am. Compl., ECF No. 21 at 27-32. Reliance argues that Mr. Wall lacks standing to assert a claim for future equitable relief. Opp'n, ECF No. 22 at 12-13.

ERISA provides that a participant may bring a civil action "to clarify his rights to future benefits under the terms of the plan," 29 U.S.C. § 1132(a)(1)(B); and "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of this plan, or (B) to obtain other appropriate relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan," 29 U.S.C. § 1132(a)(3). "A participant or beneficiary can [] bring suit generically to 'enforce his rights' under the plan, or to clarify any of his rights to future benefits." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210-11 (2004). The Court rejects Reliance's argument as the plain language of the statute provides that a participant may bring a civil action to clarify his rights to future benefits.

Accordingly, Mr. Wall's Motion for Leave to File an Amended Complaint is **GRANTED** as to his claims for: (1) interest on the six months of withheld benefits; (2) clarification of his right to future benefits; and (3) enforcing his rights under the plan.

**B.   State Common Law Claims**

Reliance argues that all of Mr. Wall's state law claims are pre-empted by ERISA. Opp'n, ECF No. 22 at 10.[1]

ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). The Supreme Court has explained that its

> case law to date has described two categories of state laws that ERISA pre-empts. First, ERISA pre-empts a state law if it has a "'reference to'" ERISA plans. [*New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 565 (1995)]. To be more precise, "[w]here a State's law acts immediately and exclusively upon ERISA plans ... or where the existence of ERISA plans is essential to the law's operation ..., that 'reference' will result in pre-emption." [*California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc.,* 519 U.S. 316, 325 (1997) (SCALIA, J., concurring). Second, ERISA pre-empts a state law that has an impermissible "connection with" ERISA plans, meaning a state law that "governs ... a central matter of plan administration" or "interferes with nationally uniform plan administration." *Egelhoff v. Egelhoff,* 532 U.S. 141, 148, 121 S.Ct. 1322, 149 L.Ed.2d 264 (2001). A state law also might have an impermissible connection with ERISA plans if "acute, albeit indirect, economic effects" of the state law "force an ERISA plan to adopt a certain scheme of substantive coverage or effectively restrict its choice of insurers." *Travelers,*

---

[1] Reliance also argues that the individual defendants are not proper parties to the suit because they are not fiduciaries. Opp'n, ECF No. 22 at 10. However, the Court has not "recast" Mr. Wall's claim as an ERISA claim to recover benefits and so the persuasive authority relied on by Reliance is inapposite. *See Hogan v. Jacobson*, 823 F.3d 872, 883 (6th Cir. 2016).

> *supra,* at 668, 115 S. Ct. 1671. When
> considered together, these formulations
> ensure that ERISA's express pre-emption clause
> receives the broad scope Congress intended
> while avoiding the clause's susceptibility to
> limitless application.

*Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 319-20 (2016).

To determine whether a claim is preempted, the court "simply asks if state law conflicts with the provisions of ERISA or operates to frustrate its objects." *VanderKam v. VanderKam*, 776 F.3d 883, 890 (D.C. Cir. 2015) (quoting *Boggs v. Boggs*, 520 U.S. 833, 841 (1997)). And "in order to answer that question, we must first ascertain the federal interest," which the Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") has stated is "to promote the interests of employees and their beneficiaries in employee benefit plans." *VanderKam,* 776 F.3d at 890 (internal quotation marks and citations omitted).

### 1. Count II: Bad Faith Against All Defendants, Breach of Implied Contractual Covenant of Good Faith and Fair Dealing, and Violations of Pennsylvania Insurance Law

Mr. Wall alleges bad faith by Reliance in "fail[ing] to thoroughly investigate [his] worsening medical conditions before illegally terminating [his] claim in January 2020 and upholding that termination six months later on appeal." Am. Compl., ECF No. 21 at 40. He further alleges bad faith in Reliance's delay in sending him for an IME. *Id.* However, and as Mr. Wall acknowledges, *see* Am. Compl., ECF No. 21 at 29 ¶ 169, District

of Columbia law does not "recognize a tort of bad faith by insurance companies in the handling of policy claims." *Choharis v. State Farm Fire & Cas. Co.,* 961 A.2d 1080, 1087 (D.C. 2008).

With regard to Mr. Wall's claim for breach of implied contractual covenant of good faith and fair dealing, the District of Columbia Court of Appeals has stated that

> Under District of Columbia law, every contract contains within it an implied covenant of both parties to act in good faith and damages may be recovered for its breach as part of a contract action. *See Murray v. Wells Fargo Home Mortgage,* 953 A.2d 308, 321 (D.C. 2008) and cases cited. Disputes relating to the respective obligations of the parties to an insurance contract should generally be addressed within the principles of law relating to contracts, and bad faith conduct can be compensated within those principles.

*Id.* Mr. Wall's breach of contract claim essentially alleges that Reliance "improper[ly] process[ed his] claim"; it is therefore preempted by ERISA. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 57 (1987) (concluding that the plaintiff's state law claims for bad faith and breach of contract "asserting improper processing of a claim for benefits and an ERISA-regulated plan" did not fall within ERISA's savings clause and so were preempted); *Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 114 (2d Cir. 2008) (affirming dismissal of plaintiff's state law claims sounding in breach of contract, breach of the covenant of good faith and fair dealing, violation of the Connecticut Unfair

Trade Practices Act, reckless misrepresentation, negligent misrepresentation, and tortious interference with contract as preempted by ERISA); *The Psychiatric Institute of Washington, D.C., Inc. v. Connecticut General Life Insurance Company*, 780 F. Supp. 24 (D.D.C. 1992) (state law breach of contract claim preempted by ERISA).

As to his claims for "bad faith" against Dr. Brodner and Dr. Jiva, Mr. Wall has presented no authority supporting a common law cause of action for "bad faith" under District of Columbia law based on the allegations in the Amended Complaint, and the Court is aware of none.

Mr. Wall alleges that Reliance's "bad faith conduct violates [Pennsylvania] insurance law regarding unfair claim determination practices." Am. Compl., ECF No. 21 at 42. Mr. Wall alleges that Reliance is based in Pennsylvania and seeks punitive damages pursuant to an alleged violation of 42 Pa.C.S. § 8371. Am. Compl., ECF No. 21 at 42. However, the United States Court of Appeals for the Third Circuit has ruled that claims brought pursuant to 42 Pa.C.S. § 8371 are preempted by ERISA, and the Court finds that ruling persuasive. *Barber v. Unum Life Insurance Co.*, 383 F. 3d 134 (3d Cir. 2004).

Accordingly, Mr. Wall's Motion for Leave to File an Amended Complaint is **DENIED** as to his bad faith, breach of contract, and

violations of Pennsylvania insurance law claims as they would
not survive a motion to dismiss.

>    **2.    Count III: Intentional Infliction of Emotional**
>         **Distress Against All Defendants**

Mr. Wall alleges that "all three defendants ha[ve] a
professional obligation to care for [his] well-being because [he
is] disabled." Am. Compl., ECF No. 21 at 51. Mr. Wall further
alleges that Dr. Brodner and Dr. Jiva "ha[ve] a relationship
with [him] that implicates [his] well being because they were
tasked with professionally evaluating [his] medical records and
determining whether there was any cause to terminate [his]
disability benefits." *Id*. Mr. Wall alleges that the individual
defendants "breached their duty to avoid inflicting emotional
distress on [him] by writing reports full of falsehoods
concluding that [he is] no longer disabled, without any evidence
to support their findings." *Id*. Mr. Wall also argues that the
defendants have violated the public policy of the United States
to protect people with disabilities, *id*. at 53; and that the
defendants should be held to a higher standard of behavior
because they were on notice of his particular susceptibility to
emotional distress, *id*.

Courts in other circuits have held that certain claims for
intentional infliction of emotional distress are not preempted

by ERSIA. In *Dasie v. The Reed Group, LTD.*, No. C 15-0318, 2015

WL 6954915 (N.D. Ca. Nov. 10, 2015), the plaintiff

> allege[d] such tortious conduct as falsely
> accusing plaintiff of "lying" about his
> disability, urging plaintiff to take
> experimental medications, inducing plaintiff
> to increase his medications, forcing plaintiff
> "to undergo a litany of rigorous medical
> examinations without considering their
> results," and pressuring plaintiff "to engage
> in further medical testing that it knew would
> cause ... pain, emotional distress and
> anxiety.

*Id.* at *4 (internal quotation marks omitted). The Court held

that the claim was not preempted because: (1) plaintiff's

request for "damages associated with his claim for intentional

infliction of emotional distress . . . is based on allegations

that involve harassing and oppressive conduct independent of the

duties of administering an ERISA plan" and therefore "falls

outside the scope of ERISA and could not have been brought under

Section 502(a)(1)(B)," *id*. at * 2; and (2) the "defendant's duty

to not engage in the alleged tortious conduct existed

independent of defendants' duties under the ERISA plan," *id*. at

*3. The Court rejected the defendant's argument that the claim

was preempted "because it is an attempt to use an alternative

enforcement mechanism to achieve the same ends provided by

ERISA" because the "plaintiff's claim for intentional infliction

of emotional distress arises from alleged harassing and

oppressive conduct beyond the denial of benefits" and because

16

plaintiff was not claiming that "the claim arose from the defendant's failure to timely pay benefits." *Id.*

In *Barker v. The Hartford Life and Accident Insurance Co.*, Civil Action No. 3:06-CV-1514-P, 2007 WL 2192298 (N.D. Tx., July 31, 2007), the plaintiff's claim for intentional infliction of emotional distress arose "from alleged humiliating, shameful, and intentional harassment by Defendant during more than one phone call." *Id.* at *5. The court held that this claim was not preempted based on the following reasoning:

> Clearly, Barker's IIED claim would not exist in the absence of the Plan; however, the Court finds this too tenuous a connection to warrant ERISA preemption. The harassment alleged by Barker occurred during the investigation of Barker's ERISA claim, not during the actual administration of benefits. Remedying such tortious conduct is not an area of exclusive federal concern, but is traditionally left to the states. Put another way, the right Barker has to be free from such hostile or intimidating treatment exists independently from his rights under his ERISA plan. If such claims were held to be preempted by ERISA, Barker would be subject to such treatment with no available recourse, and a plan administrator could investigate a claim in all manner of tortious ways with impunity.

*Id.* at *4 (internal quotation marks omitted). Whether a claim for intentional infliction of emotional distress is pre-empted by ERISA appears to be a matter of first impression in this circuit. The Court need not reach that question, however, because even if such a claim was not pre-empted, the conduct

alleged by Mr. Wall does not rise to the level of outrageousness
needed to state a claim for intentional infliction of emotional
distress.

Mr. Wall seeks damages arising out of the "extreme
emotional distress" caused by "suddenly termination long-term
disability benefits [he] had received for eight years [and]
cutting off half [his] income with only a one-month notice" and
alleges that "[a]ll defendants engaged in extreme and outrageous
conduct that intentionally or recklessly caused [him] to suffer
extreme emotional distress." Am. Compl., ECF No. 21 at 53.

With regard to the claim against Reliance, Mr. Wall alleges
that Reliance employees: (1) "went about their quest to
terminate [his] benefits with reckless disregard of the
probability of causing emotional distress"; and (2) "ignored
countless records showing [he is] Totally Disabled. They have
maintained false diagnoses for [him] in the files, trying to
minimize the severity of [his] medical conditions. They have
failed to honor the findings of a federal administrative law
judge, two Independent Medical Exams, and [Reliance] itself that
[he is] Totally Disabled. They have spent thousands of dollars
to try to inflict this distress on [him] – all for no good
reason." Ex. 8 to Am. Compl., ECF No. 21-8 at 31-32.[2] He further

_____

[2] Mr. Wall "incorporate[s] all arguments concerning Defendant
[Reliance's] intentional infliction of emotional distress from

alleges that the "Labor Market Survey" Reliance crafted was based on faulty determinations by Dr. Brodner. *Id*. at 15-18.

With regard to the claim against Dr. Brodner, Mr. Wall alleges that "Dr. Brodner's gross incompetence and gross negligence led to a determination . . . terminating [his] . . . benefits." Ex. 9 to Am. Compl., ECF No. 21-9 at 3.[3] Mr. Wall alleges that Reliance's termination of his benefits was based on a November 2019 peer review by Dr. Brodner that contains the following alleged errors: (1) he relied on an outdated diagnosis that was discredited by a 2016 IME, *id*. at 2; (2) his report contains no evidence to indicate that Mr. Wall's condition has improved, *id*. at 2-3; (3) his opinion is contradicted by IMEs that were conducted in 2016 and 2017, *id*. at 3; (4) he failed to review the record of Mr. Wall's most recent visit to the Center for Sleep and Wake Disorders, *id*. at 3-4; (5) he failed to review Mr. Wall's sleep logs, *id*. at 4; (6) he ignored additional disorders with which Mr. Wall is diagnosed, *id*. at 4-5; (7) he failed to review a 2017 test result and therefore

_____

[his] April 30, 2020, appeal letter." Am. Compl., ECF No. 21 at 52.
[3] Mr. Wall "incorporate[s] all arguments concerning Defendant Dr. Brodner's intentional infliction of emotional distress from [his] Florida Department of Health complaint." Am. Compl., ECF No. 21 at 52. Exhibits 8 and 21 to the Amended Complaint contain the same allegations regarding the errors in Dr. Brodner's peer review; the Court cities to appeal letter at Exhibit 8 to the Amended Complaint for ease of reference.

erroneously states that Mr. Wall's current treatment plan includes "management with CPAP," *id.* at 5-6; (7) his report indicates that Mr. Wall currently takes a number of medications that [he] not taken for years, *id.* at 5-6; (8) he faulted Mr. Wall for not using CPAP based on a sleep specialist's recommendation, *id.* at 6; (9) he failed to review Social Security Administration records regarding Mr. Wall's disability determination, *id.* at 6-7; (10) he failed to consider conclusions from a 2017 psychotherapy report indicating that Mr. Wall is compliant with his treatment, *id.* at 7-8; (11) he failed to review key sources including the IME's by Dr. Barnes and Singleton, sleep logs, recent medical records, the Social Security legal judgment, and sleep data graphs, *id.* at 8-9; (12) he failed to provide support for his opinion that Mr. Wall "does have work capacity on a full-time basis for employment which does not require consistent scheduling," *id.* at 10; and (13) he erroneously concluded that Mr. Wall could meet project deadlines because he is able to maintain a travel blog and meet travel schedule demands, *id.* at 11-14

Mr. Wall alleges that the decision to uphold the termination determination was based on a peer review by Dr. Jiva that contained the following alleged errors by Dr. Jiva[4]: (1) he

_____

[4]Mr. Wall "incorporate[s] all arguments concerning Defendant Dr. Jiva's intentional infliction of emotional distress from [his]

"lied" when he claimed to be a sleep specialist, Ex. 22 to Am. Compl., ECF No. 22-21 at 7; (2) he reviewed old records that are irrelevant to Mr. Wall's current diagnosis, *id.* at 8; (3) he failed to review Mr. Wall's sleep logs, *id.*; (4) he failed to review other important records, *id.*; (5) his review was not independent because he reviewed biased documents, *id.* at 9; (6) his review was based on a diagnosis that has been dismissed, rather than his current diagnoses, *id.* at 9-10; (7) he failed to examine the record of Mr. Wall's most recent visit to the Center for Sleep & Wake Disorders, *id.* at 10; (8) he ignored additional disorders with which Mr. Wall is diagnosed, *id.* at 11-12; (9) he erroneously stated that Mr. Wall has not undergone chronotherapy, *id.* at 12-13; (10) he erroneously stated that Mr. Wall was not compliance with light therapy and melatonin treatments, *id.* at 13; (11) he ignored Mr. Wall's experience taking Ritalin and Nuvigil, which he discontinued taking upon the advice of physicians, *id.* at 13-14; (12) he erroneously stated that Mr. Wall did not do an actigraphy study, *id.* at 13; (13) he erroneously stated that Mr. Wall does not maintain sleep logs, *id.* at 14-17; (14) he made a number of miscellaneous errors, *id.* at 17-18; (15) he erroneously stated that Mr. Wall should be able to "follow[] a strict sleep hygiene routing," *id.*

---

New York State Department of Health complaint." Am. Compl., ECF No. 21 at 52.

at 19; (16) he failed to review Mr. Wall's Social Security Administration records, *id.* at 19; (17) he ignored relevant medical opinions, *id.* at 19, 20; (18) he stated that Mr. Wall's "prognosis is fair" despite there being no evidence to support it, *id.* at 19; and (19) he erroneously concluded that Mr. Wall has the capacity to work on a full time basis, *id.* at 21-24.

"To succeed on a claim of intentional infliction of emotional distress, a plaintiff must show (1) extreme and outrageous conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress." *Armstrong v. Thompson*, 80 A.3d 177, 189 (D.C. 2013) (internal quotation marks omitted). "The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.* (quoting *Drejza v. Vaccaro*, 650 A.2d 1308, 1312 n.10 (D.C. 1994) (quoting Restatement (Second) of Torts § 46 cmt. d (1965))). "The ultimate question is whether the recitation of the facts to an average member of the community would arouse his [or her] resentment against the actor, and lead him [or her] to exclaim 'Outrageous!' " *Purcell v. Thomas*, 928 A.2d 699, 711 (D.C. 2007) (internal quotation marks omitted) (alterations original).

The Court by no means discounts the emotional distress that Mr. Wall alleges that the termination of his benefits caused him. He has alleged in great detail numerous errors in Dr. Brodner's and Dr. Jiva's reports, upon which Reliance allegedly relied in making its termination decision and then affirming that decision on appeal. However, those errors do not amount to the kind of outrageous behavior that needs to be alleged to state a claim for intentional infliction of emotional distress. In contrast with *Dasie*, the conduct Mr. Wall alleges does not rise to the level of outrageous conduct alleged there, where the plaintiff alleged that the defendant "falsely accus[ed him] of lying about his disability, urg[ed him] to take experimental medications, induc[ed him] to increase his medications, forc[ed him] to undergo a litany of rigorous medical examinations without considering their results, and pressur[ed him] to engage in further medical testing that it knew would cause ... pain, emotional distress and anxiety." *Dasie*, 2015 WL 6954915, at *4. And in contrast with *Barker*, he does not allege "humiliating, shameful, and intentional harassment . . . during more than one phone call. *Barker*, 2007 WL 2192298, at *4. Mr. Wall alleges numerous errors by Reliance, Dr. Brodner, and Dr. Jiva, but does not allege "conduct . . . so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly

intolerable in a civilized community." *Armstrong,* 80 A.3d at 189 (internal quotation marks omitted).

Accordingly, Mr. Wall's Motion for Leave to File an Amended Complaint is **DENIED** as to his intentional infliction of emotional distress claims against Reliance, Dr. Brodner, and Dr. Jiva as those claims would not survive a motion to dismiss.

### 3.   Count IV: Negligence Against All Defendants

Mr. Wall alleges that Reliance was negligent when it improperly terminated his benefits, and incorporating the allegations *supra* Section III.B.2 regarding Dr. Brodner and Dr. Jiva, alleges that they were negligent because of the alleged errors in their peer review reports. Am. Compl., ECF No. 21 at 56-57.

To state a claim for negligence under District of Columbia law, Mr. Wall must allege "(1) the existence of a duty owed by the defendant to the plaintiff, (2) a negligent breach of that duty by the defendant, and (3) an injury to the plaintiff (4) proximately caused by the defendant's breach." *Powell v. District of Columbia*, 602 A.2d 1123, 1133 (D.C. 1992).

With regard to Reliance, Mr. Wall alleges that: (1) Reliance owed a duty to "ensure it continued [his] long-term disability benefits as provided by the policy since [he] remain[s] Totally Disabled"; (2) it negligently breached that duty by improperly terminating his benefits; (3) he was injured

by that breach; and (4) Reliance's "negligence in improperly terminating [his] benefits was the direct and proximate" cause of his injuries. Am. Compl., ECF No. 21 at 56. With regard to Dr. Brodner and Dr. Jiva, Mr. Wall alleges that the they "owe[d] a reasonable duty of care to ensure they performed factually accurate, independent 'peer reviews' of [his] medical records under contract" with Reliance. Mot. ECF No. 21 at 57.

As instructed by the D.C. Circuit, the Court asks if the common law negligence claims "conflict[] with the provisions of ERISA or operate[] to frustrate its objects." *VanderKam*, 776 F.3d at 890. The Court concludes that they do. First, the claims conflict with ERISA's civil enforcement provision, which provides that "[a] civil action may be brought—(1) by a participant or beneficiary—... (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Pursuant to this provision, courts consider whether the denial of benefits by a plan administrator was a reasonable one based on the evidence before the administrator at the time the decision was made. *Soland v. George Washington University*, 916 F. Supp. 2d 33, 39 (D.D.C. 2013); *see also Marcin v. Reliance Standard Life Insurance Company*, 861 F.3d 254, 267 (2017) (finding that Reliance acted unreasonably in denying disability

benefits). Mr. Wall's allegations wholly pertain to the manner in which Reliance made its decision to terminate his benefits. Second, the claims "supplement[] . . . the ERISA civil enforcement remedy," *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004); because they ask the Court to review the manner in which the termination decision was made. Accordingly, these claims "conflict[] with the clear congressional intent to make the ERISA remedy exclusive." *Davila*, 542 U.S. at 209; *see also Olivo v. Elky*, 646 F. Supp. 2d 95 (D.D.C. 2009) (dismissing plaintiffs' common law negligence claim because "the wrongdoing alleged is by Plan personnel in the course of the administration of the Plan.").

Accordingly, Mr. Wall's Motion for Leave to File an Amended Complaint is **DENIED** as to his negligence claims against Reliance, Dr. Brodner, and Dr. Jiva as those claims would not survive a motion to dismiss.

### 4.   Count V: Harassment Against Reliance, Count VI: Invasion of Privacy Against Reliance

Mr. Wall alleges that Reliance hired private investigators in 2015, 2017, and 2019 at a cost of $2,207 for "three investigations into [his] personal life . . . ." Ex. 8 to Am. Compl., ECF No. 21-8 at 20-22. With regard to the 2019 background investigation conducted by Claims Bureau USA, Mr. Wall points to the following conduct by the investigators to

support these claims: (1) review of his travel blog; (2) review of his Facebook timeline; (3) database research of his "living situation"; (4) aerial and street-view imagery of his home; (5) telephone numbers of Mr. Wall's housemates and an offer to contact them to "obtain additional information pertaining to the claimant" but no allegation that they were contacted; (6) research into whether Mr. Wall owns a motor vehicle registered in the District of Columbia; (7) research into cruise dates based on Mr. Wall's travel blog and an offer to monitor the travel blog; (8) a three-day surveillance "action plan" but no allegation that the surveillance took place; (9) review of Mr. Wall's "Flight Memory profile, YouTube channel, Flickr photosharing website . . . , Craisglist, Recyclyer, Penny Saver, Oodle, 'and numerous additional classified listing websites.'" *Id.* at 22-23.

The United States Court of Appeals for the Ninth Circuit has held that a certain state common law claim for invasion of privacy was not preempted by ERISA. In *Dishman v. UNUM Life Ins. Co.*, 269 F.3d 974 (9th Cir. 2001), Mr. Dishman "successfully applied for long-term disability benefits" and received them from November 1993 until July 1995" when they were terminated after UNUM "hired several private investigative agencies to do a 'work and sports [sic] check' on him." *Id.* at 977-78. Mr. Disham alleged that "UNUM was vicariously liable for the tortious

27

invasion of privacy committed by the investigative firms it
hired," alleging

> that an investigator retained by UNUM elicited
> information about his employment status by
> falsely claiming to be a bank loan officer
> endeavoring to verify information he had
> supplied; that investigators elicited
> personal information about him from neighbors
> and acquaintances by representing that he had
> volunteered to coach a basketball team; that
> investigators sought and obtained personal
> credit card information and travel itineraries
> by impersonating him; that investigators
> falsely identified themselves when caught
> photographing his residence; and that
> investigators repeatedly called his residence
> and either hung up or else dunned the person
> answering for information about him.

*Id.* at 979-98. The Court reasoned that "[Mr.] Dishman is not
seeking to obtain through a tort remedy that which he could not
obtain through ERISA [because] his damages for invasion of
privacy remain whether or not UNUM ultimately pays his claim."
The Court further reasoned that

> The fact that the conduct at issue allegedly
> occurred "in the course of UNUM's
> administration of the plan" does not create a
> relationship sufficient to warrant
> preemption. If that were the case, a plan
> administrator could "investigate" a claim in
> all manner of tortious ways with impunity.
> What if one of UNUM's investigators had
> accidentally rear-ended Dishman's car while
> surveiling him? Would the fact that the
> surveillance was intended to shed light on his
> claim shield UNUM and the investigator from
> liability? What if UNUM had tapped Dishman's
> phone, put a tracer on his car, or trained a
> video camera into his bedroom in an effort to
> obtain information? Must that be tolerated

> simply because it is done purportedly in
> furtherance of plan administration? To ask the
> question is to answer it. Though there is
> clearly some relationship between the conduct
> alleged and the administration of the plan, it
> is not enough of a relationship to warrant
> preemption. We are certain that the objective
> of Congress in crafting Section 1144(a) was
> not to provide ERISA administrators with
> blanket immunity from garden variety torts
> which only peripherally impact daily plan
> administration.

*Id*. at 984. Whether a claim for invasion of privacy is pre-empted by ERISA appears to be a matter of first impression in this circuit. The Court need not reach that question, however, because even if such a claim was not pre-empted, the conduct alleged by Mr. Wall does not state a claim for invasion of privacy.

Under District of Columbia law, the tort of invasion of privacy—intrusion upon seclusion—has three elements: "(1) an invasion or interference by physical intrusion, by use of a defendant's sense of sight or hearing, or by use of some other form of investigation or examination; (2) into a place where the plaintiff has secluded himself, or into his private or secret concerns; (3) that would be highly offensive to an ordinary, reasonable person." *Wolf v. Regardie,* 553 A.2d 1213, 1217 (D.C. 1989) (citations and internal citations omitted). Mr. Wall's allegations describe an investigation based on publicly available information, much of which Mr. Wall himself made

publicly available, such as his YouTube channel, Facetime
timeline and his travel blog. "This tort was not created to
protect against the invasions alleged in this case—the garnering
of information from third parties, and the culling of facts from
public records." *Id*. at 1218. Furthermore, the conduct alleged
does not amount to conduct that is "highly offensive to an
ordinary, reasonable person" because the information was
gathered from publicly-available information, including
information that Mr. Wall himself made publicly available. Mr.
Wall does not allege that his roommates were contacted, nor that
the surveillance plan was implemented.

Plaintiff has presented no authority supporting a common
law cause of action for "harassment" based on the allegations in
the Amended Complaint, and the Court is aware of none.

Accordingly, Mr. Wall's Motion for Leave to File an Amended
Complaint is **DENIED** as to his claims for harassment and invasion
of privacy as those claims would not withstand a motion to
dismiss.

### 5.    Count VII: Medical Malpractice Against Dr. Brodner and Dr. Jiva

Mr. Wall asserts medical malpractice claims against Dr.
Brodner and Dr. Jiva, incorporating the allegations *supra*
Section III.B.2, and further alleges that neither doctor has
expertise in sleep disorders, and that they committed medical

malpractice in "fail[ing] to make a good-faith effort to understand a patient's 'invisible diseases.'" Am. Compl., ECF No. 21 at 59. Mr. Wall alleges that Dr. Brodner practices in Florida and that Dr. Jiva practices in New York. *Id.* at 61.

Florida state law requires compliance with pre-suit requirements for investigation, corroboration, and written notice of a medical malpractice claim, *see Largie v. Gregorian*, 913 So.2d 635 (Fla. 3d DCA 2005); none of which Mr. Wall alleges he has complied with, *see generally* Am. Compl., ECF No. 21. "Florida law mandates the dismissal of a claim for medical malpractice when the pre-suit requirements have not been fulfilled." *Johnson v. McNeil*, 278 F. App'x 866, 872 (11th Cir. 2008) (per curiam) (citation omitted) (noting that "the claimant may cure the default and proceed with the suit as long as the pre-suit requirements are fulfilled within the applicable statute of limitations").

Accordingly, Mr. Wall's Motion for Leave to File an Amended Complaint is **DENIED** as to the medical malpractice claim against Dr. Brodner as that claim would not survive a motion to dismiss at this time.

To establish a prima facie case of medical malpractice under New York State law, a plaintiff must allege "'(1) the standard of care in the locality where the treatment occurred, (2) that the defendant[s] breached that standard of care, and

31

(3) that the breach of the standard was the proximate cause of injury.'" *Deadwyler v. North Shore Univ. Hosp. at Plainview,* 55 A.D.3d 780, 781, 866 N.Y.S.2d 306 (quoting *Berger v. Becker,* 272 A.D.2d 565, 565, 709 N.Y.S.2d 418).

As instructed by the D.C. Circuit, the Court asks if the common law medical malpractice claim "conflicts with the provisions of ERISA or operates to frustrate its objects." *VanderKam*, 776 F.3d at 890. The Court concludes that it does not. First, the claim does not conflict with ERISA's civil enforcement provision because this claim is not related to the denial of benefits, but rather alleges that Dr. Jiva's conduct breached the applicable standard of care. Second, the claim does not "duplicate[], supplement[], [n]or supplant[] the ERISA civil enforcement remedy," 542 U.S. at 209; because it does not ask the Court to review the manner in which the termination decision was made, but rather to determine whether Dr. Jiva's conduct breached the applicable standard of care. Accordingly, this claim does not "conflict[] with the clear congressional intent to make the ERISA remedy exclusive." *Davila*, 542 U.S. at 209; see also *Edelen v. Osterman*, 943 F. Supp. 75, 76 (D.D.C. 1996) (holding that medical malpractice claim "has too tenuous a relationship to an employee benefits plan to support a finding of preemption").

Accordingly, Mr. Wall's Motion for Leave to File an Amended Complaint is **GRANTED** as to the medical malpractice claim against Dr. Jiva.

## IV.  Conclusion

For the reasons explained above, the Motion for Leave to File an Amended Complaint is **GRANTED IN PART** and **DENIED IN PART.** Mr. Wall may proceed on his ERISA claims for: (1) interest on the six months of withheld benefits; (2) clarification of his right to future benefits; and (3) enforcing his rights under the plan; and on his medical malpractice claim against Dr. Jiva. All other claims are **DISMISSED.** An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

**Signed:    Emmet G. Sullivan**
**United States District Judge**
**June 1, 2021**